1    ISMAIL J. RAMSEY (CABN 189820)
     United States Attorney
2
     MARTHA BOERSCH (CABN 126569)
3    Chief, Criminal Division

4    KELLY I. VOLKAR (CABN 301377)
     Assistant United States Attorney
5
          1301 Clay Street, Suite 340S
6         Oakland, California 94612
          Telephone: (510) 637-3701
7         FAX: (510) 637-3724
          Kelly.Volkar@usdoj.gov
8
     Attorneys for United States of America
9
                          UNITED STATES DISTRICT COURT
10
                       NORTHERN DISTRICT OF CALIFORNIA
11
                               OAKLAND DIVISION
12

13   UNITED STATES OF AMERICA,              )   Case No. 4:23-CR-00073-JST
                                            )
14          Plaintiff,                      )   **UNITED STATES' SENTENCING**
                                            )   **MEMORANDUM**
15      v.                                  )
                                            )   Date:   March 29, 2024, and May 6, 2024
16   JAVIER ANTONIO RAMIREZ,                )   Time:   9:30 a.m.
                                            )   Court:  Hon. Jon S. Tigar
17          Defendant.                      )
                                            )
18

19

20

21

22

23

24

25

26

27

28

U.S. SENTENCING MEMO.
4:23-CR-00073-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................3

    A.       Offense Conduct ...............................................................................................3

          1.      Minor Victim 1 ...................................................................................3

          2.      Minor Victim 2 ...................................................................................4

          3.      Minor Victim 3 ...................................................................................5

          4.      Unidentified Victims and Ramirez's Prior Convictions .......................6

          5.      Count 2:  Receipt of Child Pornography............................................7

          6.      Ramirez's Arrest and Post-Arrest Statements..................................8

    B.       Procedural History ...........................................................................................8

DISCUSSION ...............................................................................................................8

    A.       Sentencing Guidelines Calculation ................................................................9

    B.       The Government Recommends 324 Months of Imprisonment Based on the 18 U.S.C.§ 3553(a) Factors.................................................................................11

          1.      Nature and Circumstances of the Offense ......................................11

          2.      History and Characteristics of Ramirez ...........................................16

          3.      Protection of the Public and Adequate Deterrence ..........................18

          4.      Kinds of Sentences Available and Guidelines Range........................20

    C.       The Government Seeks a Restitution Hearing Within 90 Days After Sentencing.....................................................................................................22

CONCLUSION ...............................................................................................................24

1

## TABLE OF AUTHORITIES

2

<u>FEDERAL CASES</u>

3 *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) ............................................................. 13

4 *Gall v. United States*, 552 U.S. 38 (2007) ...................................................................................... 9

5 *New York v. Ferber*, 458 U.S. 747 (1982) ..................................................................................... 12

6 *Paroline v. United States*, 572 U.S. 434 (2014)....................................................................... 12, 22

7 *Rita v. United States*, 551 U.S. 338 (2007).................................................................................... 9

8 *Rossum v. Patrick*, 659 F.3d 722 (9th Cir. 2011) .......................................................................... 13

9 *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc) .................................................... 9

10 *United States v. Dowd*, 417 F.3d 1080 (9th Cir. 2005).................................................................. 14

11 *United States v. Hudson*, 986 F.3d 1206 (9th Cir. 2021)............................................................... 10

12 *United States v. Jaycox*, 962 F.3d 1066 (9th Cir. 2020)................................................................ 10

13 *United States v. Sullivan*, 797 F.3d 623 (9th Cir. 2015) ................................................................ 10

14 *United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008) ............................................................... 23

15 *United States v McCalla*, 545 F.3d 750 (9th Cir. 2008) ................................................................ 12

16

<u>FEDERAL STATUTES</u>

17 18 U.S.C. § 922 ............................................................................................................................... 20

18 18 U.S.C. § 2251 ............................................................................................................................. 20

19 18 U.S.C. § 2252 ........................................................................................................... 8, 10, 20, 22

20 18 U.S.C. § 2259 ....................................................................................................................... 21, 22

21 18 U.S.C. § 2259A ..................................................................................................................... 2, 23

22 18 U.S.C. § 2422 ........................................................................................................... 8, 20, 21, 22

23 18 U.S.C. § 2429 ............................................................................................................................. 22

24 18 U.S.C. § 3013 ....................................................................................................................... 2, 23

25 18 U.S.C. § 3014 ....................................................................................................................... 2, 23

26 18 U.S.C. § 3553 ..................................................................................................................... *passim*

27 18 U.S.C. § 3664 ..................................................................................................................... 22, 23

28 21 U.S.C. § 841 ............................................................................................................................... 20

21 U.S.C. § 859 ................................................................................................................. 20

## STATE STATUTES

Cal. Penal Code § 245 ......................................................................................................... 7

Cal. Penal Code § 261.5 ................................................................................................ 7, 10

Cal. Penal Code § 288 ................................................................................................... 7, 10

## FEDERAL RULES

U.S.S.G. § 2G2.1 ........................................................................................................... 9, 16

U.S.S.G. § 4A1.1 .............................................................................................................. 10

U.S.S.G. § 4B1.5 ................................................................................................................ 9

Judiciary Sentencing Information (JSIN), https://www.ussc.gov/guidelines/judiciary-sentencing-information ........................................................................................................... 16, 20

## OTHER AUTHORITIES

Centers for Disease Control and Prevention, *Routes of Drug Use Among Drug Overdose Deaths* (published Feb. 15, 2024) (last accessed Mar. 21, 2024), https://www.cdc.gov/mmwr/volumes/73/wr/mm7306a2.htm#:~:text=Preliminary%20data%20indicate%20that%20U.S.,have%20increased%20steadily%20(1). .................................................................... 13

United States Sentencing Commission, Fentanyl and Fentanyl Analogues:  Federal Trends and Trafficking Patterns 2 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210125_Fentanyl-Report.pdf. .......................................... 13

# INTRODUCTION

Javier Antonio Ramirez is an incessant sexual predator who preys on teenage girls already in a vulnerable emotional place and ups the ante by hooking them on fentanyl—only to sexually exploit them and film it.

Ramirez's conduct was egregious and unremitting.  For the three known victims brave enough to come forward, Ramirez ingratiated themselves[1] by selling narcotics to the victims, introducing each for the first time to fentanyl when the girls were 16 or 17 years old, watching them overdose multiple times, and continuing to supply more fentanyl to the victims.  Ramirez, while almost 30 years old, engaged in sexual intercourse with each victim while they were still under the age of 18 and Ramirez knew their age.  For each victim, Ramirez insisted Ramirez photograph or film their sexual acts.  For one victim— without her knowledge and with caustic disdain for her dignity—Ramirez posted images of her orally copulating Ramirez onto Ramirez's publicly accessible Instagram account.  When another victim tried to break away, Ramirez threatened her mother that Ramirez would impregnate the victim against her will if she tried to leave.  The threat was real given that Ramirez physically abused the victims on more than one occasion and already had a young daughter whose mother was a teenager herself.

Each of the victims believed at one point that Ramirez truly cared for them.  However, objectively, the true pattern is clear:  each victim simply aged out shortly after her 18th birthday, at which point Ramirez discarded her—forever traumatized—and moved onto the next victim.  In 2022, Ramirez engaged in this pattern with Minor Victim 1 and Minor Victim 2, two high school juniors who were 16 and 17 years old, both born in 2005.  In 2021, Ramirez engaged in this pattern with Minor Victim 3, 17 years old and born in 2004, ending the relationship mere months before contacting Minor Victim 1.  In 2021, Ramirez's daughter was born to a then-19-year-old (born in 2002).  In 2018, Ramirez was in a relationship with a girl born in 2000 who informed police they had been in a relationship since before she turned 18.  In 2014, Ramirez was convicted for having sexual intercourse with a 13-year-old on multiple occasions.  Not only is Ramirez continuously hands-on with underage girls, but Ramirez also had almost 100 videos and images of child pornography purchased from the

---

[1]  According to the PSR, Ramirez prefers pronouns they/them.  PSR ¶ 105 n.3.

internet on their electronic devices, depicting child sexual abuse material involving pre-pubescent girls and even children as young as toddlers.

Because Ramirez understood what they did was wrong and could incur a lengthy prison sentence, unrepentantly repeated a pattern of abuse and exploitation aimed at minors, supplied lethal narcotics to minors despite multiple witnessed overdoses, and has demonstrated no real remorse nor desire to correct course in the future, the conduct of this case warrants a Guidelines sentence of 360 months to life imprisonment.  However, the government has recently learned of mitigating factors surrounding Ramirez's childhood, which leads the government to respectfully recommend a sentence of **324 months of imprisonment**.  The government respectfully requests the Court impose the other aspects recommended by Probation and/or as agreed by the parties in the plea agreement, namely, a term of 15 years of supervised release, a $200 special assessment under 18 U.S.C. § 3013, an additional special assessment of $5,000 under 18 U.S.C. § 3014, and an additional assessment for an offense for trafficking in child pornography of up to $35,000 under 18 U.S.C. § 2259A(a)(2), forfeiture of Ramirez's electronic devices containing child pornography, and restitution in an amount to be determined at a hearing within 90 days after the bifurcated sentencing date of May 6, 2024.[2]

The government would like to inform the Court that, as of this filing, the following statutory victims would like to be heard at sentencing on March 29, 2024:  Minor Victim 1, Minor Victim 1's mother, Minor Victim 2, Minor Victim 2's mother, and Minor Victim 3.  Minor Victim 1's father would like to be heard on May 6, 2024, at the second part of the sentencing hearing.  The government respectfully requests that the Court order the victims' names to be sealed and any inadvertent reference to a victim's name replaced in the transcript with either the respective anonymized pseudonym or the individual's initials.  *See* Presentence Investigation Report ("PSR") ¶ 37 (providing chart with three victims from Count 1 and their dates of birth).

//

//

---

[2] The government respectfully submits this initial sentencing memorandum to provide context for the victims who wish to exercise their right to be heard at the hearing on March 29, 2024; the government will file a short supplemental memorandum by the later deadline set by the Court.  *See* Dkt. 42.

# BACKGROUND

### A.     Offense Conduct

#### 1.     Minor Victim 1

On January 13, 2023, less than one month after her 17th birthday and during her junior year, Minor Victim 1 suffered a non-fatal overdose from fentanyl while at high school. PSR ¶ 6. A school nurse located Minor Victim 1 in the girl's bathroom, administered multiple doses of Narcan, and revived Minor Victim 1, who was subsequently transported to a local hospital. *Id.* The subsequent investigation led to Ramirez as the person who supplied the fentanyl to Minor Victim 1. PSR ¶¶ 7, 13, 17.

Minor Victim 1 met Ramirez in September 2022 when Ramirez sent her a direct message on Instagram. PSR ¶¶ 14, 35. Minor Victim 1 was 16 years old at the time, and Ramirez knew she was enrolled in high school. *Id.* Minor Victim 1 purchased marijuana from Ramirez, and then cocaine, at which point Ramirez began to lower the drug prices for her because Ramirez "like[d]" her. *Id.* Ramirez introduced Minor Victim 1 to fentanyl, after which time they used fentanyl together weekly. PSR ¶¶ 14, 17, 40, 41. Ramirez regularly drove Minor Victim 1 from Contra Costa County to San Francisco to purchase fentanyl. PSR ¶ 17. On one of those occasions, Ramirez had his approximately one-year-old daughter with them in the car, and Ramirez smoked fentanyl in the immediate vicinity of the infant. *Id.*

Minor Victim 1 overdosed on fentanyl in Ramirez's presence on at least two occasions prior to her overdose at high school. PSR ¶¶ 9, 13. Despite Ramirez messaging Minor Victim 1 that they would not provide her with "any more fent" due to the prior overdoses, that did not stop Ramirez from driving Minor Victim 1 from Contra Costa County to San Francisco to purchase fentanyl on January 13, 2023. *Id.* A few hours later Minor Victim 1 overdosed at school. *Id.* The GPS location history on Ramirez's phone (obtained pursuant to a federal search warrant) corroborated that Ramirez traveled to the vicinity of Minor Victim 1's house, then to San Francisco, then back to Minor Victim 1's house between approximately midnight and 4:30 a.m. PSR ¶ 17.

Beginning in November 2022, Ramirez had sexual intercourse with Minor Victim 1 when she was 16 years old. PSR ¶¶ 16, 35. Ramirez had sexual intercourse with Minor Victim 1 numerous times, "often . . . after they smoked fentanyl together," and admitted to her parents that they knew she was a minor when they had sex. PSR ¶¶ 11, 16. Ramirez also boasted about their sexual activity. Ramirez

messaged Minor Victim 1's ex-boyfriend bragging that she let Ramirez "fuck her in the ass yesterday." PSR ¶ 9. Ramirez also posted sexually suggestive photographs on Ramirez's publicly accessible Instagram account. PSR ¶ 10. Specifically, Ramirez photographed Minor Victim 1 orally copulating Ramirez and posted those images on Instagram. *Id.* Based on the dates of the images, Minor Victim 1 was 16 years old. *Id.*

Ramirez suggested to Minor Victim 1 that they film their sexual encounters. PSR ¶ 16. Ramirez recorded having sex with Minor Victim 1 on at least two occasions on Ramirez's phone in addition to the photos of Minor Victim 1 performing oral sex on Ramirez. *Id.* Ramirez had "an album" of photos and videos of them engaging in sexual acts with Minor Victim 1 on Ramirez's phone. *Id.* One of those videos is 41 seconds long and shows Ramirez—identifiable by their tattoos—engaging in sexual intercourse with Minor Victim 1 while her face is visible to the camera. PSR ¶ 19. Based on the date the video was taken, Minor Victim 1 was 16 years old at the time. *Id.*; *see also* PSR ¶ 33.

Ramirez was also physically abusive toward Minor Victim 1. PSR ¶ 15. On at least one occasion, Ramirez and Minor Victim 1 were riding BART into San Francisco together, and Ramirez was attempting to look through Minor Victim 1's cell phone without her consent. *Id.* When Minor Victim 1 attempted to resist, Ramirez pinned her against the wall on BART with his elbow on her neck and then sat on Minor Victim 1 for a few minutes until Ramirez was done looking through her cell phone. *Id.* Ramirez threatened to punch Minor Victim 1 if she did not listen; Ramirez told other people on BART who were "staring" to mind their own business. *Id.* On another occasion, Minor Victim 1 attempted to walk away from Ramirez, and Ramirez grabbed her arm hard enough to leave a bruise. *See* PSR ¶ 41. Minor Victim 1's mother was concerned when she saw the bruise and took a photo, which she later provided to law enforcement. *See id.* Minor Victim 1's mother also recounted that Ramirez once pushed Minor Victim 1 down cement stairs at a movie theater. *Id.* Ramirez's Instagram also had more than a dozen pictures of firearms, including handguns and rifles, despite Ramirez's prior felony conviction. PSR ¶ 8.

## 2. Minor Victim 2

Ramirez engaged in a similar pattern with Minor Victim 2. Minor Victim 1 introduced Ramirez in October 2022 to her friend, Minor Victim 2, who was then a 17-year-old high school junior. PSR

¶¶ 18, 21.  Ramirez knew at the time that Minor Victim 2 was 17 years old.  PSR ¶ 21.  Ramirez supplied Minor Victim 2 with fentanyl on multiple occasions.  PSR ¶ 22; Dkt. 6.  Minor Victim 2 has overdosed in the presence of Ramirez multiple times.  PSR ¶ 43.  Minor Victim 2 described that her and Ramirez would smoke fentanyl and have sexual intercourse.  PSR ¶¶ 22, 35.  Ramirez began asking to take pictures and videos of Minor Victim 2 engaged in sexually explicit activity.  PSR ¶¶ 21–22.  For example, Ramirez took a picture while having sex with Minor Victim 2 in her bedroom, and also recorded a FaceTime call where Minor Victim 2 was masturbating and Ramirez's penis was exposed. *Id.*  Ramirez brought both Minor Victim 1 and Minor Victim 2 to an abandoned apartment where they would use drugs, have sex, and Ramirez would film it.  *See* Dkt. 6.

### 3.  Minor Victim 3

Ramirez engaged in a similar pattern with Minor Victim 3, who was 17 years old at the time, from mid-2021 to mid-2022—ending shortly after Minor Victim 3 turned 18 and shortly before Ramirez began their relationship with Minor Victim 1.  PSR ¶¶ 23, 35.  Ramirez first contacted Minor Victim 3 using social media when she was 15 years old.  PSR ¶ 24.  Ramirez falsely claimed they were 19 years old and began selling drugs to Minor Victim 3.  PSR ¶¶ 24, 26–27.  Ramirez introduced Minor Victim 3 to fentanyl.  *Id.*  After they began a sexual relationship, Ramirez provided drugs to Minor Victim 3 for cheaper or even for free.  *Id.*  During the summer of 2021, when Minor Victim 3 had recently turned 17 years old, Ramirez would regularly transport her from Contra Costa County to San Francisco to purchase fentanyl.  *Id.*

Minor Victim 3 overdosed in front of Ramirez on multiple occasions.  PSR ¶¶ 27, 29.  On at least one occasion in San Francisco, shortly after her 17th birthday, Minor Victim 3 overdosed on fentanyl that Ramirez purchased for her while in the presence of Ramirez.  *Id.*  Ramirez revived her using Narcan and then continued to smoke fentanyl in Minor Victim 3's presence.  *Id.*  Minor Victim 3 also observed that Ramirez had an infant daughter and Ramirez was often high on fentanyl while the infant was present.  *Id.*

Minor Victim 3 began a sexual relationship with Ramirez when she turned 17 years old, and Ramirez was aware that she was 17 years old at the time.  PSR ¶ 24.  Ramirez and Minor Victim 3 would use drugs and have sex.  Ramirez pressured Minor Victim 3 to "make a sex tape" and record their

1    sexual encounters.  PSR ¶ 25.  Ramirez also took photos of Minor Victim 3 naked.  *Id.*  Minor Victim 3

2    felt uncomfortable with the recordings and naked photographs because she worried that they might end

3    up on the internet.  *Id.*  At times, Ramirez filmed Minor Victim 3 without her permission, including

4    during their sexually explicit acts.  *Id.*

5         Ramirez was also physically abusive toward Minor Victim 3.  PSR ¶ 28.  On at least one

6    occasion, Ramirez punched Minor Victim 3 in response to her asking Ramirez to take her home.  *Id.*

7    Minor Victim 3 was scared of Ramirez.  *Id.*  After Minor Victim 3 overdosed, she entered a substance

8    abuse treatment program.  PSR ¶ 27.  When Minor Victim 3 completed the program, Minor Victim 3's

9    mother tried to keep her from seeing Ramirez again.  PSR ¶ 28.  Ramirez responded by sending Minor

10   Victim 3's mother a threatening text message along the lines of:  "I'm going to get her pregnant against

11   her will" if Minor Victim 3's mother continued to interfere in their relationship.  *Id.*

12        Minor Victim 3 overdosed in front of Ramirez again in summer 2022, shortly after she turned

13   18 years old, at which point she entered a second substance abuse treatment program.  PSR ¶ 29.  Minor

14   Victim 3 ended the relationship with Ramirez and had stayed sober for more than a year by the time she

15   spoke with law enforcement in August 2023.  *Id.*

16              **4.    Unidentified Victims and Ramirez's Prior Convictions**

17        Law enforcement discovered multiple other text message threads on Ramirez's cell phone

18   (pursuant to a federal search warrant) that indicated potential relationships with other minors.  *See* PSR

19   ¶¶ 23, 30.  Minor Victim 1 had also introduced Ramirez to another of her high school friends (*see* PSR

20   ¶ 42), who declined to speak with law enforcement.  Ramirez has a two-year-old daughter, born in 2021,

21   whose mother was 19 years old at the time of birth.  *See* PSR ¶ 137.  In one of the text message threads

22   found on Ramirez's cell phone with an unidentified person, Ramirez stated:  "your [sic] 16 and I'm like

23   10 years older than u [sic]."  PSR ¶ 30.  The unknown individual asked, "Aren't we dating?" and

24   Ramirez responded, "yeah . . . but the police can't find out[;] having sex with a minor 10 years younger

25   than u [sic] is like 7 years in prison and I have strike so my time gets doubled up[.]"  *Id.*

26        Ramirez has been convicted before for having sexual intercourse with a minor.  PSR ¶ 103.  In

27   2014, Ramirez was 19 years old and had sexual intercourse with a 13-year-old girl on at least two

28   occasions.  *Id.*  While Ramirez was charged with Lewd or Lascivious Acts upon a child under the age of

14 years old, in violation of California Penal Code § 288(a), that charge was dismissed, and Ramirez

pleaded guilty to Sex with a Minor 3 Years Younger, in violation of California Penal Code § 261.5(c).

In 2018, Ramirez was in a relationship with a 17-year-old and, two months after her 18th

birthday, was lying on her bed when the girl's mother's boyfriend came home and assaulted Ramirez.

PSR ¶ 105.  Ramirez grabbed a firearm and fired a shot at the man, leaving a bullet hole in the ceiling of

the girl's bedroom.  *Id.*  Ramirez was convicted for Felony Assault with Firearm on a Person, in

violation of California Penal Code § 245(a)(2).  *Id.*  Ramirez has additional convictions, resulting in a

Criminal History Category V as described below.  PSR ¶¶ 101–109.

### 5.    Count 2:  Receipt of Child Pornography

In addition to produced videos and images of sexual intercourse with the known minor victims

identified above, law enforcement also found almost 100 videos and images of child pornography

purchased from the internet on Ramirez's devices.  PSR ¶¶ 31–32; Dkt. 32.  Some of the images/videos

involved children as young as toddlers.  Dkt. 32.  Specifically, on the Telegram application found on

Ramirez's cell phone, on or about October 23, 2022, Ramirez indicated that they wanted to purchase

child sexual abuse material by typing "cp?" (where "cp" commonly stands for "child pornography") and

received offers for purchase in return (as shown in the below image).  PSR ¶¶ 31–32.





1    On or about January 3, 2023 (as described in Count 2), Ramirez received a video file depicting a

2    minor engaged in sexually explicit conduct, which was discovered on Ramirez's cell phone.  PSR ¶ 32.

3    The video was eight minutes and 55 seconds in length and depicted an adult male raping a pre-pubescent

4    girl approximately six to eight years old.  *Id.*  This video serves as the basis for Ramirez's conviction on

5    Count 2.  Dkt. 32.  The victims of identified series are listed in the PSR ¶ 47.

**6.    Ramirez's Arrest and Post-Arrest Statements**

7        On February 2, 2023, Ramirez was arrested on unrelated charges.  PSR ¶ 12 & n.1.  At the time

8    of arrest, Ramirez had fentanyl in the center console of the vehicle.  *Id.*

9        On recorded jail calls, Ramirez asked a male friend to contact Minor Victim 2 on social media to

10   let her know that Ramirez was in jail and that the cops might try to speak with her; the friend did so.

11   BATES US-000364–66.  Ramirez also stated that "[h]aving sex with an underage girl is a lot worse

12   tha[n] giving her drugs" and Ramirez could "get [ ] in trouble for having sex with her[.]"  *Id.*  This led

13   law enforcement to arrange an interview with Minor Victim 2.

14       On another recorded jail call with the mother of Ramirez's daughter, Ramirez asked if she could

15   locate Ramirez's Apple iPhone and "literally delete anything in my phone before anyone can get to it . . .

16   [b]ecause if they don't find anything they can't charge me with anything."  *Id.*

**B.    Procedural History**

18       On February 10, 2023, a one-count federal criminal complaint for Receipt of Child Pornography

19   issued against Ramirez.  Dkt. 1.  Ramirez was ordered detained.  Dkt. 8.  On March 2, 2023, a grand

20   jury returned a federal indictment charging Ramirez with one count of Coercing or Enticing a Minor, in

21   violation of 18 U.S.C. § 2422(b) (Count 1), and one count of Receipt of Child Pornography, in violation

22   of 18 U.S.C. § 2252(a)(2) (Count 2).  Dkt. 11.

23       On November 13, 2023, Ramirez pleaded guilty to Counts 1 and 2 of the indictment via a written

24   plea agreement.  PSR ¶ 2; Dkt. 32.  Sentencing is currently scheduled in two parts before this Court,

25   beginning on March 29, 2024, and concluding on May 6, 2024.  PSR ¶ 2; *see* Dkts. 36–40.

**DISCUSSION**

27       The Court must impose a sentence sufficient, but not greater than necessary, to reflect the

28   seriousness of the offense, deter the defendant and others from committing similar crimes, protect the

public from the defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*).  The statute sets forth several factors that the Court must consider in determining a just sentence:  (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).  "[T]he Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Though the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."  *Rita v. United States*, 551 U.S. 338, 350 (2007).

### A.   Sentencing Guidelines Calculation

As set forth in the Plea Agreement, the Sentencing Guidelines calculations for the Ramirez's offense level is as follows:

| | |
|---|---|
| **BASE OFFENSE LEVEL** (U.S.S.G. §§ 2G1.3(c)(1), 2G2.1(a)) | +32 |
| **SPECIFIC OFFENSE CHARACTERISTICS** | |
| **Offense involved commission of a sexual act or sexual contact** (U.S.S.G. § 2G2.1(b)(2)(A)) | +2 |
| **Offense involved use of computer** (U.S.S.G. § 2G2.1(b)(6)(B)) | +2 |
| | |
| **ADJUSTMENTS** | |
| **Multiple victims are treated as separate counts** (U.S.S.G. § 2G2.1(d)(1); U.S.S.G. § 3D1.4) | +3[3] |
| **Pattern of prohibited sexual conduct** (U.S.S.G. § 4B1.5(b)(1)) | +5 |
| **Acceptance of responsibility** (U.S.S.G. § 3E1.1) | -3 |
| | |
| **Total Adjusted Offense Level** | **41** |

---

[3]  Probation has one additional point accounting for Count 2.  *See* PSR ¶¶ 62–99.

| Criminal History Category | V[4] |
|---|---|
| Guidelines Range | 360 months – Life |

The government agrees with the Guidelines calculation provided by Probation, which has one additional point added to represent a separate group for Count 2 in addition to the three known minor victims identified for Count 1. *See* PSR ¶¶ 62–99.  The government does not include that extra point above to honor the parties' plea agreement; however, either Total Offense Level 41 (as determined in the plea agreement) or 42 (as calculated by Probation) coupled with Criminal History Category V results in a Guidelines range of 360 months to life imprisonment.

The government agrees with Probation's calculation of Ramirez's criminal history score of 11, which results in a Criminal History Category V.  PSR ¶¶ 100–109.  Ramirez has prior convictions for driving under the influence in 2019 (PSR ¶ 106), felony assault with a firearm on a person in 2018 (PSR ¶ 105), felony carrying a loaded firearm in public in 2017 (PSR ¶ 104), felony conviction for sexual intercourse with a 13-year-old girl as described above (PSR ¶ 103),[5] and misdemeanor vandalism (PSR ¶ 102).  In 2015, Ramirez was arrested and questioned for their involvement in a large fight at a house party with Norteño gang members where someone fired a gun resulting in a death.  PSR ¶ 110.  Ramirez has also previously been arrested numerous times for drug-related, theft-related, obstruction-related, and robbery and battery charges.  PSR ¶¶ 114–125.  Because Ramirez was still on probation at the time of the present offense, and because his criminal history score is greater than 7, an additional point is added under U.S.S.G. § 4A1.1(e).  PSR ¶ 108.

In sum, Ramirez's Guidelines range is 360 months to life imprisonment.

---

[4]  The parties reached no agreement regarding Criminal History Category in the Plea Agreement.

[5]  While Ramirez was arrested for violating California Penal Code § 288(a), which would have qualified as a prior sex offense for purposes of increasing the mandatory minimums for charges under 18 U.S.C. § 2252, *see United States v. Hudson*, 986 F.3d 1206 (9th Cir. 2021), and *United States v. Sullivan*, 797 F.3d 623 (9th Cir. 2015), Ramirez pleaded guilty to California Penal Code § 261.5(c), which the Ninth Circuit held did not trigger the higher mandatory minimum under § 2252 in *United States v. Jaycox*, 962 F.3d 1066, 1068–71 (9th Cir. 2020).

**B.      The Government Recommends 324 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors**

The depraved and unfathomable nature of the underlying offense cannot be overstated—and is aptly represented by the applicable top-of-the Guidelines range.  Ramirez's conduct warrants the sentence recommended by the Guidelines—at least 30 years—as contemplated by the government's promise in the plea agreement.  Dkt. 32 ¶ 17.  However, the government has received mitigating information from defense counsel indicating that Ramirez suffered a chaotic, unstable, and abusive upbringing, which must be weighed against Ramirez's horrific and continuous conduct over the course of multiple years.  While the Probation Office recommends 156 months of imprisonment, and defense counsel will likely join that recommendation as contemplated in the plea agreement (Dkt. 32 ¶ 8), the government respectfully recommends that a 10% downward variance adequately balances the sentencing factors of § 3553(a) for the following reasons:

### 1.      Nature and Circumstances of the Offense

The nature and circumstances of the offense demonstrate that Ramirez has a penchant for exploiting underage teenage girls by starting as their drug dealer, gambling carelessly with their lives, and grooming them into sexual relationships that Ramirez then films.  Ramirez sexually exploited a 16-year-old girl in December 2022 and photographed and filmed multiple images and videos of Minor Victim 1 engaged in sex acts with Ramirez.  PSR ¶¶ 6–20.  The abuse continued:  Ramirez posted sexually suggestive photographs of the victim on his publicly accessible Instagram account.  *Id.*  Ramirez had an entire album of images and videos of engaging in sexual activity with Minor Victim 1.  *Id.*  Ramirez also supplied her with drugs—giving her a discount when their sexual relationship began.  *Id.*  Ramirez introduced Minor Victim 1 to fentanyl, watched her overdose multiple times from the drug including in Ramirez's presence, told her that they would not provide her "any more fent," and then did so any way.  *Id.*  In January 2023, Minor Victim 1 had a non-fatal overdose from fentanyl that Ramirez had supplied, including driving her from Contra Costa County to San Francisco that morning to purchase fentanyl.  *Id.*

Minor Victim 1's overdose while at high school exposed a deeper and more disturbing pattern.  Ramirez had engaged in this behavior before and showed no signs of stopping.  For each of the three

1   known victims, Ramirez engaged in sexual intercourse with girls they knew were 16 or 17 years old and,

2   in each instance, suggested they record it whether or not it made the girl uncomfortable to do so.  PSR

3   ¶¶ 6–29.  Ramirez took both Minor Victim 1 and Minor Victim 2 to the same abandoned apartment

4   where they would use drugs, have sex, and Ramirez would film it.  *See* Dkt. 6.  If the girls tried to refuse

5   Ramirez, they became physically abusive and controlling—punching or choking the victims at times.

6   PSR ¶¶ 15, 28, 41.  When Minor Victim 3 tried to break away while still 17 years old, Ramirez

7   threatened her mother that Ramirez was "going to get her pregnant against her will" if the mother did

8   not stop interfering.  PSR ¶ 28.  The threat was real given that Ramirez physically abused the victims on

9   more than one occasion and already had a young daughter whose mother was a teenager herself.

10          There was no mistake that Ramirez knew what they were doing was illegal and could incur a

11   significant prison term if they were caught.  Ramirez texted an unidentified minor that "the police can't

12   find out [because] having sex with a minor 10 years younger than u [sic] is like 7 years in prison and

13   I have [a] strike so my time gets doubled up[.]"  PSR ¶ 30.  When Ramirez was arrested on unrelated

14   vandalism charges, Ramirez instructed the 19-year-old mother of their child to remotely wipe their

15   smartphone.  The evidence also explains why Ramirez would want to reset their devices—Ramirez was

16   also actively seeking out and purchasing child pornography online, including almost 100 videos and

17   images of child sexual abuse material involving prepubescent children and toddlers.

18          Ramirez's conduct intersects three different types of long-lasting harms.

19          First, these victims were children.  They were unprepared and unequipped to cope with sexual

20   trauma and addiction inflicted upon them at such a young age.  The Supreme Court has long recognized

21   that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of

22   surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982).  This is in part because "[a]

23   democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people

24   into full maturity as citizens." *Id.* (quotation omitted).  The Supreme Court has also acknowledged that

25   child pornography "produces concrete and devastating harms for real, identifiable victims." *Paroline v.

26   United States*, 572 U.S. 434, 457–58 (2014); *see also United States v McCalla*, 545 F.3d 750, 755–56

27   (9th Cir. 2008) ("Congress specifically expressed the idea . . . that child pornography . . . inflames the

28   desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing

the creation and distribution of child pornography and the sexual abuse and exploitation of actual

children who are victimized as a result[.]").  Indeed, the Supreme Court has repeatedly recognized that

"the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and

mental health of the child." *Ferber*, 458 U.S. at 758; *see also id.* at 758 n.9 (describing long-lasting

effects of child sexual abuse into adulthood and supporting studies).  "[A]s a permanent record of a

child's abuse, the continued circulation itself would harm the child who had participated. Like a

defamatory statement, each new publication of the speech would cause new injury to the child's

reputation and emotional well-being." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002).

Ramirez posted images of Minor Victim 1 performing oral sex on Ramirez on their publicly accessible

Instagram account.

Second, for each of the three known victims, Ramirez introduced them to fentanyl, watched them

overdose multiple times in Ramirez's presence, occasionally reviving them with Narcan, and then

continued to supply them with fentanyl.  Fentanyl is a synthetic opioid 30 times more potent than heroin

and its abuse has become alarmingly more prevalent and exponentially more dangerous in recent years.[6]

For example, preliminary reports indicate more than 109,000 people died from drug overdoses in 2022,

with "nearly 70% [involving] synthetic opioids other than methadone, primarily illegally manufactured

fentanyl and fentanyl analogs[.]"[7]  A small amount of fentanyl "can cause a person to stop breathing"

and "affect respiration"—particularly for "people without significant experience taking opiates[.]"

*Rossum v. Patrick*, 659 F.3d 722, 727 (9th Cir. 2011) (Gertner, J., dissenting from granting panel

rehearing) (describing expert testimony from underlying trial).  These statistics are horrifying and it can

be easy to forget that each of these heartbreaking numbers represents a real victim, with real families,

who feel real pain.  Every time fentanyl is sold illegally, lives are put at risk.  It is like playing a game of

Russian roulette, where a user (or even someone who comes in close contact with the fentanyl) can

---

[6] United States Sentencing Commission, Fentanyl and Fentanyl Analogues:  Federal Trends and Trafficking Patterns 2 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210125_Fentanyl-Report.pdf.

[7] Centers for Disease Control and Prevention, *Routes of Drug Use Among Drug Overdose Deaths* (published Feb. 15, 2024) (last accessed Mar. 21, 2024), https://www.cdc.gov/mmwr/volumes/73/wr/mm7306a2.htm#:~:text=Preliminary%20data%20indicate%20that%20U.S.,have%20increased%20steadily%20(1).

1   overdose and die at any moment—it's that toxic.

2       In this case, each of the victims—while minors—suffered more than one overdose from fentanyl

3   in Ramirez's presence.  PSR ¶¶ 9, 13, 27, 29, 41, 42, 43.  Their parents have described in their victim

4   impact statements the horrors these terrible events have wrought upon their families and lives.  PSR

5   ¶¶ 41, 42, 43.  Ramirez asserted in their submitted expert report that they witnessed close friends die

6   from overdosing on fentanyl.  Kele Kirschenbaum, Psy. D., Psychological Evaluation of Javier Ramirez,

7   at 8–9 (Mar. 13, 2024) (hereinafter, "Kirschenbaum Report").  Nevertheless, Ramirez played Russian

8   roulette with the lives of Minor Victim 1, Minor Victim 2, and Minor Victim 3.  Ramirez's decision to

9   continue procuring and distributing fentanyl to multiple individuals over several years, even with full

10  knowledge that the drug was deadly and had killed Ramirez's close friends in the past, was inexplicable

11  and unspeakably horrible.  Ramirez's persistent supplying of fentanyl to minor victims, while sexually

12  exploiting them—often using drugs together before engaging in sexual activity—has had disastrous

13  effects.  Then, once the victims reached 18 years old, Ramirez would discard them—forever

14  traumatized—to find Ramirez's next conquest.

15      Third, Ramirez was violent and cruel.  Ramirez physically assaulted the girls, slapping,

16  punching, choking the victims, and throwing Minor Victim 1 down cement stairs.  PSR ¶¶ 15, 28, 41.

17  Congress in enacting the Violence Against Women Act warned of "the psychological, economic, and

18  social realities of domestic violence victims" and sought to shift the focus from a woman's behavior

19  when abused to "why men batter and why our culture and the justice system often allow men to continue

20  this illegal behavior."  *United States v. Dowd*, 417 F.3d 1080, 1088 (9th Cir. 2005) (quoting S. Rep. No.

21  103–138, at 46 (1993)).  Minor Victim 1 stated that she met Ramirez "at a vulnerable spot in [her] life."

22  PSR ¶ 40.  Similarly, Minor Victim 2 reported that she met Ramirez at "a low point in [her] life and

23  [she] needed a friend."  PSR ¶ 44.  In response, Ramirez hooked them on highly addictive drugs and

24  verbally and physically abused them.  As Minor Victim 1 said, "if you really cared for someone, would

25  you supply them with very addictive drugs?"  PSR ¶ 40.  Minor Victim 2 stated that Ramirez "used [her]

26  in the same way" others had taken advantage of her in the past.  PSR ¶ 44.  These victims are survivors.

27  *See* PSR ¶ 40.  They have shown extraordinary courage and tenacity to overcome their trauma and

28  addiction, mature into productive adults, and speak out against their abuser.  They are determined to

1  help other girls avoid their fate.

2      These victims are loved.  Their parents are devastated and enraged by the abuse of their

3  daughters and the suffering they were helpless to prevent.  Minor Victim 1's mother described how

4  Ramirez hid the first overdose Minor Victim 1 suffered by labeling it an asthma exacerbation.  PSR

5  ¶ 41.  She described how Ramirez got Minor Victim 1 hooked on fentanyl and their attention before

6  betraying that trust, watching Minor Victim 1 overdose multiple times, and learning about the physical

7  abuse she suffered at the hands of Ramirez.  *Id.*  She asked, "[h]ow do you recover from this?  From

8  knowing the most precious thing in their lives, their only child, has been debased, humiliated, hurt, and

9  forever changed?"  *Id.*  Minor Victim 2's mother similarly described Ramirez as "a predator of youth"

10  who watched Minor Victim 2 overdose multiple times and used "trick[s] to get the girls to feel they were

11  special."  PSR ¶ 43.  She urges the Court to "see the level of calculation that [Ramirez] put into [their]

12  disgusting manipulation of these girls."  *Id.*  Minor Victim 1's father described how Ramirez hooking

13  Minor Victim 1 on fentanyl ripped apart her friendships, her social life as she knew it, damaged their

14  family relationships, and led Minor Victim 1 to hide the abusive and sexual nature of her relationship

15  with Ramirez.  PSR ¶ 42.  He describes, as Minor Victim 1 "got deeper into her addiction[,]" he found

16  her non-responsive in their home once and "worried [he] would have to pick out a dress to bury her in"

17  rather than a prom dress.  *Id.*  One night, Minor Victim 1 ran out of the house and her father, terrified,

18  "drove up and down the streets of the Tenderloin [where Ramirez had taken her before to purchase

19  fentanyl], wondering if she was unconscious on a sidewalk from a drug overdose[.]"  *Id.*

20      This sentencing memorandum is dedicated to these victims and their families.  It centers their

21  narratives, their feelings, and their words.  It is meant to give them a voice—and to speak for any other

22  victims who felt too afraid or ashamed to come forward.  Ramirez will likely spend their sentencing

23  submission minimizing their own conduct and arguing that their personal problems and traumatic

24  history outweigh the extraordinary harms they have caused to these victims and this community.

25  However, Ramirez's personal history and chaotic and abusive upbringing does not justify their noxious

26  conduct in this case.  The nature and circumstances of the offense involves horrific conduct that Ramirez

27  repeatedly engaged in over the course of multiple years and thus warrants a lengthy sentence.

28  18 U.S.C. § 3553(a)(1).

### 2.    History and Characteristics of Ramirez

Ramirez also has a lengthy criminal history—independently resulting in a Criminal History Category V—that includes a prior felony conviction for having sexual intercourse with a then-13-year-old girl and a prior felony conviction for firing a gun at the stepfather figure of a just-turned-18-year-old girl.  PSR ¶¶ 101–109.  Unlike the majority of defendants facing federal child pornography charges—who are often first-time offenders with minimal or no criminal history—Ramirez has a prior conviction for having sexual intercourse with a 13-year-old girl and has four additional convictions.  *Id.*  For example, according to the Judiciary Sentencing Information (JSIN) data, 155 defendants had the same primary Guideline as Ramirez, U.S.S.G. § 2G2.1, with a Total Offense Level of 42 and Criminal History Category I, as compared to 9 defendants that had a Criminal History Category V, as Ramirez does.  For the Total Offense Level of 41 calculated under the plea agreement, the same pattern remains true—87 defendants had a Criminal History Category of I, whereas only 8 had a Criminal History Category V like Ramirez.  As described above, the nature and circumstances of the conduct, particularly coupled with Ramirez's prior criminal history, warrants a Guidelines sentence.

The government acknowledges and sympathizes with Ramirez's chaotic, abusive, and unstable upbringing, as presented in their expert report.  Kirschenbaum Report; *see also* PSR ¶¶ 127–168.  Ramirez describes verbal and physical abuse they suffered from a young age until 14 years old at the hands of family members, unstable living conditions, persistent substance abuse, and untreated mental health illnesses.  *Id.*  Ramirez describes becoming transient at age 14 and often needing to sell their body for sex to pay for necessities and narcotics.  *Id.*  Ramirez describes addiction to multiple different substances for most of their life.  *Id.*  Ramirez will likely assert that this upbringing warrants the Court departing downward from the Guidelines range of 360 months to life imprisonment to 156 months (or 13 years) of imprisonment.

However, while Ramirez's upbringing does warrant a slight variance, their background weighs against the egregiousness of the conduct, harm to the victims, danger to the community, seriousness of the offense, need to promote respect for the law and just punishment, need for specific and general deterrence, and need to account for the kinds of sentences applicable to the underlying conduct.  18 U.S.C. § 3553(a).  Indeed, while the mitigating factors presented by Ramirez warrant a slight

variance downward from the Guidelines range—the government recommends 10%, resulting in a recommendation of **324 months' imprisonment**—it does not entirely excuse Ramirez's unremitting pattern of inflicting abuse on countless other minors that they themselves know the terrors of suffering. For example, Ramirez describes years of being anally penetrated even against his will by a family member when Ramirez was prepubescent (Kirschenbaum Report at 5), and yet they bragged to another male when Minor Victim 1 let Ramirez "fuck her in the ass yesterday." PSR ¶ 9. Ramirez described frequent physical and verbal abuse by his stepfather (Kirschenbaum Report at 6), and yet they inflicted similar abuse on the minor victims in this case, leaving bruises, choking them on public transportation, throwing them down cement stairs. PSR ¶¶ 15, 28, 41. Ramirez described witnessing as an adult at least two "close friends" die from overdosing on fentanyl *before* meeting any of the minor victims in this case (Kirschenbaum Report at 8–9), and yet they introduced each of the minor victims to fentanyl and repeatedly gave them more even after the victims suffered overdoses in front of Ramirez.

The nature of Ramirez's prior convictions also demonstrates that Ramirez's conduct toward the identified minor victims in this case was not unusual. Solely looking at adult conduct, Ramirez has three prior felony convictions, two prior misdemeanor convictions, and fifteen other prior arrests. PSR ¶¶ 101–125. These prior offenses involve proven or likely sexual acts with minors. PSR ¶¶ 103, 105, 110. In 2014, Ramirez was caught having sexual intercourse with a 13-year-old on at least two occasions. PSR ¶ 103. In 2015, Ramirez was identified as the person locked inside the resident's parents' master bedroom with the resident's sister, which started a house fight that erupted into approximately 15 people fighting until one person was shot and killed. PSR ¶ 110. The sister also identified Ramirez as the person who likely "hit her over the head with a bottle." *Id.* In 2018, Ramirez was lying on the bed in the bedroom of B.C.—who was two months past her 18th birthday and indicated she had been in a relationship with Ramirez for at least three months (meaning, when she was still 17)—when B.C.'s mother's boyfriend saw Ramirez and assaulted Ramirez. PSR ¶ 105. Ramirez reached for a firearm and fired it at the older male, leaving a bullet hole in the ceiling of B.C.'s bedroom. *Id.*

Ramirez is a self-proclaimed Norteño drop-out, whose father was also a Norteño, and who "still hung out with active Norteño" members. PSR ¶¶ 110, 128. Many of his prior convictions and arrests are for violent offenses such as assaulting a person with a firearm, carrying a loaded firearm in public,

1   being part of a large gang-related house fight where someone was shot and killed, multiple arrests for

2   robbery and battery, as well as multiple arrests for resisting arrest.  PSR ¶¶ 101–125.  Ramirez was still

3   on probation at the time of the present offense.  *Id.*

4         In sum, despite Ramirez's childhood trauma, they have shown no signs indicating a willingness

5   to change their behavior even when convicted and arrested multiple times for prior child exploitation-

6   related, drug-related, and violence-related crimes.  On balance, the history and characteristics of the

7   defendant still warrant a lengthy sentence even if a slight downward variance from the Guidelines range

8   is warranted.  18 U.S.C. § 3553(a)(1).

9         **3.**     **Protection of the Public and Adequate Deterrence**

10        Protecting the public and deterring Ramirez's future violence against women and girls are

11  paramount concerns for the government.  *See* 18 U.S.C. § 3553(a)(2)(B) and (C).  Over the last decade

12  Ramirez has left a trail of broken girls and broken families in their wake.  Ramirez sexually exploited

13  numerous girls, manipulated and controlled them by isolating them from their families and social

14  support systems, introduced them to highly addictive narcotics to lower their guard, and used violence

15  and threats of violence if they resisted Ramirez's demands.  Ramirez's unrepentant and unremitting

16  behavior showed no signs of stopping until arrested by law enforcement.  Ramirez knew—before

17  exploiting Minor Victim 1 and Minor Victim 2—that "the police can't find out [because] having sex

18  with a minor 10 years younger than u [sic] is like 7 years in prison and I have [a] strike so my time gets

19  doubled up[.]"  PSR ¶ 30.  Ramirez knew that they possibly faced 14 years in prison for having sex with

20  a 16-year-old girl and yet they did it anyway.  Ramirez's heinous conduct deserves a forceful sanction

21  from this Court to protect future girls from harm—including potentially Ramirez's own 2-year-old

22  daughter who will be a teenager herself in 13 years—to protect the community from Ramirez's violence,

23  and to provide adequate deterrence given the devastation Ramirez has already caused to so many.  The

24  identified victims will suffer lifelong trauma that will not end with this case.

25        Ramirez sexually abused teenage girls, exploited them by filming sexual acts with them, thereby

26  producing child pornography, and sometimes posting those images publicly on the internet.  In addition,

27  Ramirez had almost 100 videos of child pornography on their devices purchased from the internet,

28  which contained prepubescent children and toddlers.  156 months is simply insufficient to "reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" under 18 U.S.C. § 3553(a)(2)(A).  Rather, 324 months would be sufficient, but not greater than necessary, to reflect those sentencing goals.

324 months of imprisonment would also serve the general and specific deterrence goals of § 3553(a).  General deterrence would be served because a lengthy prison term would illustrate that the criminal justice system will impose severe punishment on any like-minded individuals who seek to sexually exploit minor children with hands-on offenses.  General deterrence is especially important in this case because it will signal to victims that they can report sexual abuse conduct and the criminal justice system will impose such a heavy penalty on the offender—encouraging anyone subject to such behavior in the future to come forward.  Specific deterrence against Ramirez could not be more warranted given their criminal history and stated knowledge that they faced at least 14 years if caught. Ramirez has already shown that they are a recidivist offender, as their prior state court conviction did nothing to stop them with respect to these three victims.

Similarly, general deterrence is an important factor in this case also given the repeated supplying of fentanyl to minors.  The community must understand that fentanyl is extraordinarily dangerous and providing it, even in small amounts, comes with serious consequences.  In this case, Ramirez not only created new victims with substance abuse problems, Ramirez also showed no regard for their lives by continuing to provide lethal doses after prior known overdoses.

Ramirez's conduct has ruined many lives.  Ramirez deserves the full weight of the Court's condemnation for their relentless exploitation of minors, violent abuse, and blatant and sustained pattern of providing the most lethal of substances to young girls.  Ramirez's conduct was not an isolated instance of sexual exploitation that could be explained simply by their own abusive and chaotic upbringing, but rather a pattern of knowing, deliberate conduct over several years that includes sexual and physical violence, generated drug abuse and dependency on a deadly substance, and choices that knowingly and repeatedly put the identified victims' lives at risk.  During a two-year period, Ramirez repeatedly endangered the lives of the minor victims through the use of fentanyl Ramirez supplied, sexually exploited the victims with vaginal and anal intercourse and oral copulation acts that Ramirez also filmed or photographed for their enjoyment, and assaulted the minor victims in brazen public

incidents.  The government therefore recommends that the Court sentence Ramirez to **324 months of imprisonment** on Count 1 (concurrent with 240 months on Count 2 as the maximum available sentence), to be followed by 15 years of supervised release, along with the other fines, restitution, and conditions referenced below.  Such recommendations are reserved for the worst offenders the government encounters—the most callous, cruel, unabating, and depraved of defendants.  Ramirez's conduct easily meets that threshold.

### 4.      Kinds of Sentences Available and Guidelines Range

The remaining § 3553(a) factors also weigh in favor of sentencing Ramirez to a lengthy term of imprisonment.  The Court must consider the "kinds of sentences available," the applicable Guidelines range, and the need to "avoid unwarranted sentence[ing] disparities among defendants with similar records who have been found guilty of similar conduct[.]"  18 U.S.C. § 3553(a)(3)–(6).

As for the kinds of sentences available based on the underlying conduct, this case involves conduct at the intersection of multiple morally reprehensible crimes with corresponding stiff penalties.  For example, Ramirez's conduct involved coercing and enticing minors (in violation of 18 U.S.C. § 2422(b), which carries a 10-year mandatory minimum), producing child pornography (in violation of 18 U.S.C. § 2251(a), which carries a 15-year mandatory minimum), receiving child pornography (in violation of 18 U.S.C. § 2252(a)(2), which carries a 5-year mandatory minimum), being a felon-in-possession of firearms (in violation of 18 U.S.C. § 922(g)(1)), and distributing fentanyl to a person under 21 years of age with the possibility of death or serious bodily injury resulting (in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 859(a), which carries a 20-year mandatory minimum).  Ramirez pleaded guilty to only two of those charges—coercing and enticing minors (in violation of 18 U.S.C. § 2422(b)) and receipt of child pornography (in violation of 18 U.S.C. § 2252(a)(2)).

The applicable Guidelines range—which does not even capture Ramirez's drug-related conduct—represents the seriousness of the offense by recommending a sentence of 30 years' to life imprisonment.  The Judiciary Sentencing Information (JSIN) data is also instructive:  similarly situated defendants received an average length of imprisonment of 317 months and a median length of 360 months.  PSR ¶ 194.  Cases with similar facts from this District are also instructive:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- *United States v. Guizar-Cuellar*, No. 5:16-cr-00150-1-BLF, Dkt. 647 (Sept. 28, 2022) = defendant sentenced to 460 months' imprisonment and 15 years supervised release for sex trafficking women and 16- and 17-year-old girls, committing violent acts against them, and supplying methamphetamine to the victims to keep them awake.

- *United States v. Telles, Jr.*, No. 4:16-cr-00424-JSW, Dkt. 388 (June 18, 2019) = defendant sentenced to 302 months' imprisonment and 15 years supervised release for coercing and enticing one 14-year-old victim to engage in sexual intercourse after multiple sexually explicit electronic communications.

- *United States v. Spencer*, No. 3:17-cr-00259-CRB, Dkt. 143 (July 10, 2019) = defendant sentenced to 360 months' imprisonment and 15 years of supervised release for molesting two children and raping 10-year-old boy, as well as having child pornography on defendant's devices.

- *United States v. Feliciano*, No. 4:19-cr-00708-JSW, Dkt. 33 (July 6, 2020) = defendant sentenced to 300 months' imprisonment and 10 years of supervised release for producing child pornography of 9-year-old and 5-year-old children and having thousands of files of child pornography on devices, including as young as toddlers.

- *United States v. Izaguirre*, No. 3:22-cr-00331-WHO, Dkt. 47 (Sept. 14, 2023) = defendant sentenced to 216 months' imprisonment and 15 years of supervised release for using job as driving instructor and social media to coerce and entice teenage girls, having sexual intercourse with three minor victims, and receipt of child pornography.

- *United States v. Esparza*, No. 4:20-cr-00308-YGR, Dkt. 62 (Dec. 9, 2021) = defendant sentenced to 210 months' imprisonment and 3 years of supervised release for producing child pornography of multiple minor victims and, while defendant was 21 years old, having sexual intercourse with five teenage girls.

- *United States v. Guardado*, No. 4:21-cr-00241-JSW, Dkt. 39 (Feb. 22, 2022) = defendant sentenced to 200 months' imprisonment and 15 years of supervised release for coercing and enticing 3-year-old into sexual contact that defendant filmed.

While the cases above are instructive, it is important to note that most of the cases involve the sexual exploitation aspect without the additional aggravating factors of supplied fentanyl and physical abuse.  The government also notes the present facts are far more egregious than the last sentence the Court handed down based on coercion and enticement charges (under 18 U.S.C. § 2422(b)) in *United States v. Marigny, Jr.*, No. 4:21-cr-00020-JST, Dkt. 62 (Apr. 1, 2022), where the Court sentenced a defendant who had teenage boys take sexually explicit photos and send them to defendant but who never made physical contact with the minors to 144 months' imprisonment and 10 years of supervised release. By contrast, here, Ramirez made physical contact with three identified teenage girl victims, Ramirez took the sexually explicit photos and videos of the victims, Ramirez introduced each of them to fentanyl and watched them overdose, and Ramirez physically assaulted them.

For all these reasons, the government recommends that the Court sentence Ramirez to a below-Guidelines sentence of **324 months of imprisonment** based on an analysis of the sentencing factors in 18 U.S.C. § 3553(a).

### C.    The Government Seeks a Restitution Hearing Within 90 Days After Sentencing

Restitution for victims of child pornography offenses is mandatory under 18 U.S.C. §§ 2259, 2429.  Victims are statutorily entitled to restitution under the provisions of the Mandatory Victim Restitution Act of 1996, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (the AVAA), and the Mandatory Restitution for Sexual Exploitation of Children Act of 1994. Specifically, in child pornography trafficking cases—which is defined to include offenses under 18 U.S.C. §§ 2252 and 2422, as Ramirez has pleaded to here—the Court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the defendant's crime, and then "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2); *see also Paroline v. United States*, 572 U.S. 434, 457–62 (2014).  Restitution in child pornography cases serves "twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." *Paroline*, 572 U.S. at 457.  To the extent there is a dispute about the correct amount of restitution, it is the government's burden to demonstrate the amount of the loss to

the victim by a preponderance of the evidence.  *See United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) (citing 18 U.S.C. § 3664(e)).

The government respectfully requests that the Court set a date for a hearing on restitution within 90 days after the bifurcated sentencing hearing on May 6, 2024.  The government is in the process of obtaining the relevant information to meet its burden in seeking restitution on behalf of Minor Victim 1, Minor Victim 2, and Minor Victim 3.

The government has received and shared with Ramirez restitution requests in connection with Count 2 and will provide those requests once all restitution amounts are ascertained.  For Count 2, the victims from 2 identified series of child pornography images, which were possessed by Ramirez in this case, have submitted requests for restitution: one victim from the AprilBlonde series, and one victim from the Vicky series.  As detailed in their victim impact statements and restitution requests, these victims incurred losses as a result of Ramirez's possession of child pornography depicting the victims. *See* 18 U.S.C. § 2259(b)(2)(A).  The government therefore requests **$15,000** in restitution for these two victims of Count 2, apportioned as follows:

| Victim Series | Restitution Amount | Restitution to be Paid to |
|---|---|---|
| AprilBlonde | $5,000 | Restore The Child PLLC in trust for April<br>2522 N. Proctor St., Ste 85 |
| Vicky | $10,000 | Carol L. Hepburn in trust for Lily<br>PO Box 17718 |
| **TOTAL FOR COUNT 2** | **$15,000** | |

Pursuant to 18 U.S.C. § 3664(d)(5), undersigned counsel informs the Court that the Count 1 victims' losses are not ascertainable 10 days prior to sentencing, and requests that the Court set a date for the final determination of the claims within 90 days of the sentencing hearing if the parties are unable to reach a stipulated resolution.

//

//

//

//

//

**CONCLUSION**

For the foregoing reasons, with full consideration of the Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Defendant Javier Antonio Ramirez to a sentence of **324 months of imprisonment** on Count 1, to be served concurrently with a maximum sentence of 240 months of imprisonment on Count 2, to be followed by 15 years of supervised release (with the conditions recommended by the U.S. Probation Office), a $200 special assessment under 18 U.S.C. § 3013, an additional special assessment of $5,000 under 18 U.S.C. § 3014, and an additional assessment for an offense for trafficking in child pornography of up to $35,000 under 18 U.S.C. § 2259A(a)(2), forfeiture of Ramirez's electronic devices containing child pornography, and restitution according to the payment plan suggested but with an amount to be determined at a hearing within 90 days after the bifurcated sentencing date on May 6.

Dated: March 26, 2024

ISMAIL J. RAMSEY
United States Attorney


  /s/   *Kelly I. Volkar*
KELLY I. VOLKAR
Assistant United States Attorney