ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3701
    FAX: (510) 637-3724
    Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JAVIER ANTONIO RAMIREZ,<br><br>    Defendant. | Case No. 4:23-CR-00073-JST<br><br>**UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM**<br><br>Date:  March 29, 2024, and May 6, 2024<br>Time:  9:30 a.m.<br>Court:  Hon. Jon S. Tigar |

As explained in further detail in the United States' initial sentencing memorandum (Dkt. 43), Javier Antonio Ramirez understood what they[1] did was wrong and could incur a lengthy prison sentence, unrepentantly repeated a pattern of abuse and sexual exploitation aimed at minors, supplied lethal narcotics to minors despite multiple witnessed overdoses, and has demonstrated no real remorse nor desire to correct course in the future—conduct which fully warrants a sentence within the top-of-Guidelines range of 360 months to life imprisonment that the parties and Probation agree applies in this case.  Dkt. 32; Presentence Investigation Report ("PSR") ¶ 173.  Balancing against this conduct, the government acknowledges and sympathizes with the mitigating factors of Ramirez's chaotic, abusive, and unstable upbringing, as presented in their expert report.  The government respectfully recommends that an appropriate balancing of the 18 U.S.C. § 3553(a) is a sentence of **324 months of imprisonment**, along with the remaining aspects of the sentence recommended by Probation and/or as agreed by the parties in the plea agreement.

The harrowing victim impact statements provided at the initial sentencing hearing on March 29, 2024, support the government's recommended sentence.  *See* Dkt. 46, 3/29/24 Sentencing Hearing Transcript ("Sent. Tr.").  Over the last decade Ramirez has left a trail of broken girls and broken families in their wake.  Ramirez ingratiated themselves by selling narcotics to the victims, introducing each for the first time to fentanyl when the girls were 16 or 17 years old, watching them overdose multiple times, and continuing to supply more fentanyl to the victims.  Ramirez, while almost 30 years old, engaged in sexual intercourse with each victim while they were still under the age of 18 and Ramirez knew their age.  For each victim, Ramirez insisted Ramirez photograph or film their sexual acts—in at least one instance posting an image publicly online.

The Court recently heard from three brave victims and one parent.  Sent. Tr. at 8–23. Minor Victim 3 recounted how Ramirez "introduce[d] [her] into such a dangerous and criminal world and put [her] underneath substances that could kill you in a second."  Sent. Tr. at 9.  Similarly, Minor Victim 1 said Ramirez "introduced [her] to one of the biggest demons, fentanyl, that [she] has to this day."  Sent. Tr. at 29.  While Ramirez seeks to excuse their actions as "enabling [the victims'] addictions

---

[1] According to the PSR, Ramirez prefers pronouns they/them.  PSR ¶ 105 n.3.  Several victims used male pronouns (he/him) in their statements and the government has not altered those references.

U.S. SUPP. SENTENCING MEMO.  1
4:23-CR-00073-JST

because [Ramirez] was struggling with [theirs]" (Sent. Tr. at 27), Ramirez's actions say otherwise. Not only did Ramirez introduce the victims to fentanyl, but Ramirez also resisted the victims' attempts to get sober. Minor Victim 3 described getting out of "rehab and [telling Ramirez] I can't be doing what we do anymore, and then he takes me right to San Francisco the next [day]" to get fentanyl. Sent. Tr. at 10. Similarly, Minor Victim 2 said "one of the first times [she] met [Ramirez], we smoked fentanyl together." Sent. Tr. at 22. While Minor Victim 2 was "trying to get sober[,]" smoking fentanyl with Ramirez was "one of the only things we did" besides have sexual intercourse. Sent. Tr. at 22. When Ramirez transported each of the victims from Contra Costa County to San Francisco, they traveled for more than an hour roundtrip via BART or car—multiple times, over and over again. Each of the victims—while minors—suffered more than one overdose from fentanyl in Ramirez's presence. PSR ¶¶ 9, 13, 27, 29, 41, 42, 43. Ramirez's decision to continue procuring and distributing fentanyl to multiple individuals over several years, even with full knowledge that the drug was deadly and had killed Ramirez's close friends in the past (Sent. Tr. at 28), was inexplicable and unspeakably horrible.

Ramirez's pattern of use and abuse of the victims went beyond hooking them on addictive drugs, gambling with their lives, and using their inhibited state to sexually exploit them—Ramirez also used physical violence and manipulation as tools of control over the victims. As Minor Victim 3 stated: "[H]e used me. He used me all the time. Hit me. Endangered me. Like, put me in danger. [T]hreaten[ed] my family." Sent. Tr. at 9. Indeed, when Minor Victim 3 tried to break away, Ramirez threatened her mother that Ramirez would impregnate the victim against her will if she tried to leave, not an idle threat given that Ramirez physically abused the victims on more than one occasion and already had a young daughter whose mother was a teenager herself. Minor Victim 1 described Ramirez as "someone who could hurt someone and not even think twice about it." Sent. Tr. at 20. Minor Victim 2 felt that Ramirez "treated us like we were toys" and employed manipulation such as "pin[ning] [her and Minor Victim 1] kind of against each other." Sent. Tr. at 22. Ramirez physically assaulted the girls, slapping, punching, choking the victims, and throwing Minor Victim 1 down cement stairs. PSR ¶¶ 15, 28, 41. Minor Victim 1's mother described observing "the bruises [Ramirez] gave her [daughter], even though she lied to cover for you just like any battered woman does." Sent. Tr. at 16.

Ramirez suffered abuse in their own childhood and yet has done nothing but replicate that

behavior and inflict similar suffering on others for years.  Minor Victim 3 captured it before Ramirez spoke when she said: "[H]e's going to be who he is no matter what."  Sent. Tr. at 11.  Minor Victim 3 described Ramirez as "an evil person," "horrible[,]" and "a disgusting human being."  Sent. Tr. at 9.  Minor Victim 1 said that Ramirez "will forever have a negative impact for [her]."  Sent. Tr. at 20.  Ramirez was "not who [she] thought [they] were" and Minor Victim 1 will remember Ramirez as the person "who always took everything from [her]."  *Id.*  Minor Victim 2 said Ramirez "hurt people" and Ramirez "ha[s]n't learned [their] lesson and [they] need to[,]" otherwise Ramirez "will continue to hurt people[.]"  Sent. Tr. at 21.

Minor Victim 1's mother explained the deceptive lengths that Ramirez went to in order to conceal Ramirez's behavior.  Sent. Tr. at 13–19.  She described meeting Ramirez, who claimed to be 19 years old when he was really 28 years old, and hearing Ramirez tell her "parent to parent" that Ramirez would "keep an eye" on her daughter.  *Id.*  And yet, Minor Victim 1's mother would later learn that Ramirez had already endangered her daughter, introducing her to fentanyl, causing her first overdose, and smoking fentanyl in the bathroom of the hospital with Minor Victim 1.  *Id.*  Ramirez was "extra cruel" in his physical and sexual abuse of Minor Victim 1 and made Minor Victim 1's family's life "a living hell[,]" hooking their adopted daughter on a drug that made her barely recognizable.  *Id.*  Minor Victim 1's mother described learning that—the day her daughter overdosed at high school, when she thought her daughter was going to die—Ramirez had been on FaceTime with Minor Victim 1 in the high school bathroom while she smoked the nearly fatal fentanyl that Ramirez had helped her procure the night before.  Sent. Tr. at 15–16.  Minor Victim 1's mother described how her daughter was a "plaything[]" for Ramirez, but their family has suffered the fallout in the year plus since, as Minor Victim 1 struggles with her addiction that Ramirez created.  Sent. Tr. at 16–18.  Minor Victim 1's mother stated that she hopes Ramirez never has to endure, once Ramirez's own daughter becomes a teenager, their daughter speaking and then having sex with a man 12 years older, photographing their sexual acts and posting them online, "because it will break your heart as it has ours."  *Id.*

As stated more fully in the government's initial sentencing memorandum (Dkt. 43), Ramirez's conduct was horrific and unremitting.  There was no mistake that Ramirez knew what they were doing was illegal and could incur a significant prison term if they were caught.  Ramirez texted an unidentified

minor that "the police can't find out [because] having sex with a minor 10 years younger than u [sic] is like 7 years in prison and I have [a] strike so my time gets doubled up[.]"  PSR ¶ 30.  When Ramirez was arrested on unrelated vandalism charges, Ramirez instructed the 19-year-old mother of their child to remotely wipe their smartphone.  Not surprising given that Ramirez was also actively seeking out and purchasing child pornography online, including almost 100 videos and images of child sexual abuse material involving prepubescent children and toddlers.  The video file underlying Count 2 is eight minutes and 55 seconds in length, depicting an adult male raping a pre-pubescent girl approximately six to eight years old.  PSR ¶ 32.

Furthermore, unlike the majority of defendants facing federal child pornography charges, Ramirez has a lengthy criminal history—independently resulting in a Criminal History Category V— that includes a prior felony conviction for having sexual intercourse on multiple occasions with a then-13-year-old girl and a prior felony conviction for firing a gun at the stepfather figure of a just-turned-18-year-old girl.  PSR ¶¶ 101–109.

The facts of this case most resemble *United States v. Guizar-Cuellar*, No. 5:16-cr-00150-1-BLF, Dkt. 647 (Sept. 28, 2022), where the Court sentenced Guizar-Cuellar to 460 months of imprisonment and 15 years of supervised release for sex trafficking 16- and 17-year-old girls.  While the underlying charges are different, the facts of the case are similar, given the multiple teenage victims, the sexual and physical abuse perpetuated by the defendant, and the fact that the defendant introduced and supplied the minors with addictive narcotics (methamphetamine) to perpetuate his scheme.  Like Ramirez, Guizar-Cueller was a former Norteño gang member and had a significant criminal history.  Here, Ramirez did not pimp out the minor victims to others—although in her interview with law enforcement, Minor Victim 3 stated Ramirez asked her if she would consider working on the blade—the remainder of the conduct is eerily similar.

Given Ramirez's depraved and unrepentant pattern of behavior, the multifaceted harm that Ramirez inflicted (intersecting at least three different types of long-lasting harms on multiple victims), and the harrowing statements by the victims explaining the perpetual impact that Ramirez's conduct will have on their lives, the sentence recommended by the Guidelines of 360 months to life imprisonment is aptly warranted.  The government acknowledges that the mitigating factors presented by Ramirez

through their expert report warrant a slight variance downward, but 156 months of imprisonment simply inadequate to balance the 18 U.S.C. § 3553(a) sentencing factors.  Rather, the government respectfully submits that a 10% downward variance to 324 months' imprisonment would be sufficient, but not greater than necessary, to reflect those sentencing goals.  The government therefore recommends that the Court sentence Ramirez to **324 months of imprisonment** on Count 1 (concurrent with 240 months on Count 2 as the maximum available sentence), to be followed by 15 years of supervised release, along with the a $200 special assessment under 18 U.S.C. § 3013, an additional special assessment of $5,000 under 18 U.S.C. § 3014, and an additional assessment for an offense for trafficking in child pornography of up to $35,000 under 18 U.S.C. § 2259A(a)(2), forfeiture of Ramirez's electronic devices containing child pornography, and mandatory restitution according to the payment plan suggested but with an amount to be determined at a hearing within 90 days after May 6, 2024.  Such recommendations are reserved for the worst offenders the government encounters—the most callous, cruel, unabating, and depraved of defendants.  Ramirez's conduct easily meets that threshold.

*       *       *

As of this supplemental filing, the government understands that Minor Victim 1's father would like to be heard at sentencing on May 6, 2024.  Minor Victim 3's mother has asked if she may attend the hearing on May 6 virtually, via videoconference or teleconference, to accommodate her work schedule.  The government respectfully requests that the Court maintain its order sealing victims' names and replacing references to their names with their respective anonymized pseudonym or, for the parents, the individual's initials.  Sent. Tr. at 7; PSR ¶ 37.

Dated: April 29, 2024

ISMAIL J. RAMSEY
United States Attorney

  /s/   *Kelly I. Volkar*
KELLY I. VOLKAR
Assistant United States Attorney