UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAVIER ANTONIO RAMIREZ,<br>Defendant. | Case No. 23-cr-00073-JST-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RESTITUTION**<br><br>Re: ECF No. 67 |
|---|---|

## I. BACKGROUND

Defendant Javier Ramirez pleaded guilty to one count of coercion and enticement of a minor, a felony, in violation of 18 U.S.C. § 2422(b), and one count of receipt of child pornography, a felony, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). ECF No. 54. On May 6, 2024, the Court sentenced Ramirez to a custodial sentence of 240 months on the coercion count and 216 months on the child pornography count, to run concurrently, followed by 15 years of supervised release. *Id.* Now before the Court is the Government's motion for an order of restitution. ECF No. 67. The Government requests restitution for three victims of Ramirez's coercion of a minor and two victims of his receipt of child pornography, as follows:

- Minor Victim One      $228,762.37
- Minor Victim Two      $175,777
- Minor Victim Three    $10,000
- "AprilBlonde"          $5,000
- "Vicky"                $10,000

Ramirez acknowledges that restitution is appropriate but disputes the amounts requested by the Government. ECF No. 66. The Court heard argument on August 2, 2024.[1] ECF No. 69.

## II. ANALYSIS

Restitution for a violation of Section 2422(b), coercion and enticement of a minor, is made mandatory by 18 U.S.C. § 2429(a). Section 2429(b)(1) states that "[t]he order of restitution shall direct the defendant to pay the victim . . . the full amount of the victim's losses . . . ." Section (b)(3) states that the term "'full amount of the victim's losses' has the same meaning as provided in section 2259(b)(3)." The current version of Section 2259(b)(3) does not appear to include a definition of "the full amount of the victim's losses." Section 2259(c)(2), however, defines the term as including "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim . . . , including—

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) reasonable attorneys' fees, as well as other costs incurred; and

(F) any other relevant losses incurred by the victim."

18 U.S.C. § 2259(c)(2).

Restitution in child pornography is mandatory and is also governed by 18 U.S.C. § 2259. The Supreme Court has recognized that a victim of child pornography "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline v. United States*, 572 U.S. 434, 457 (2014). The process for determining the amount of restitution in a child

---

[1] By statute, "the final determination of the victim's losses [is] not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). However, "[t]he ninety-day period in 18 U.S.C. § 3664(d)(5) is not jurisdictional and the exact amount of restitution may be determined outside that time period so long as the court has sufficiently expressed an intent to award restitution," as this Court has done. *United States v. Johnson*, No. 20-30051, 2022 WL 1315305, at *2 (9th Cir. May 3, 2022) (citing *Dolan v. United States*, 560 U.S. 605, 611 (2010)) (affirming child pornography restitution order).

2

pornography case is set forth in 18 U.S.C. § 2259(b)(2). The court must first determine "the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim." 18 U.S.C. § 2259(b)(2)(A). After computing the amount of the victim's losses, the court must then order restitution "in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2)(B). "A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses." 18 U.S.C. § 2259(b)(2)(C). "After a victim has received restitution in the full amount of the victim's losses, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated." *United States v. Hoffman*, No. 2:22-CR-00018-TL, 2022 WL 4017890, at *7 (W.D. Wash. Sept. 2, 2022) (citing 18 U.S.C. § 2259(b)(2)(C)).

"For a court to award restitution under the statute, the government must first 'prove by a preponderance of the evidence that [the defendant's] offenses proximately caused the losses incurred by' the victims." *United States v. Hoffman*, No. 2:22-CR-00018-TL, 2022 WL 4017890, at *2 (W.D. Wash. Sept. 2, 2022) (alteration in original) (quoting *United States v. Kennedy*, 643 F.3d 1251, 1263 (9th Cir. 2011)). It must then prove the restitution amount by a preponderance of the evidence. *Id.*

In determining the victim's losses, "a district court need only 'estimate, based upon facts in the record, the amount of victim's loss with some reasonable certainty.'" *United States v. Moore*, No. 22-30157, 2024 WL 1616070, at *2 (9th Cir. Apr. 15, 2024) (quoting *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007)). "[P]recision is neither expected nor required," and "the ultimate decision will be a mix of 'discretion and estimation.'" *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015) (quoting *Paroline*, 572 U.S. at 462). Notwithstanding, restitution "may be awarded only for losses for which the defendant's conduct was an 'actual and proximate cause.'" *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011) (quoting *United States v. Peterson,* 538 F.3d 1064, 1068 (9th Cir. 2008)).

### A. Minor Victim One

Minor Victim One seeks a total of $228,762.37 in restitution for the following expenditures: $109,075 for psychiatric or psychological care she has incurred or is projected to incur; $7,597.37 for participation in family therapy; $11,230 for psychiatric or psychological care received by her mother and father; $4,460 for medical expenses she incurred when she overdosed on drugs provided to her by Ramirez; and $96,400 for the cost of drug rehabilitation treatment. ECF No. 67 at 7–8. Ramirez agrees to a restitution amount of $116,923.37 to compensate Minor Victim One for therapy expenses but objects to the remaining items on the grounds that Minor Victim One's mother and father are not "victims" within the meaning of the relevant statute, and that Minor Victim One's need for drug treatment was not caused by Ramirez's offense conduct.

With regard to the first issue, the Government argues that the expense of Minor Victim One's parents' psychological care "fall[s] squarely within the statutory authority for 'medical services relating to physical, psychiatric, or psychological care[,]' 18 U.S.C. § 2259(c)(2)(A), for an 'individual harmed as a result of a commission of [the] crime[,]' and 'the legal guardian of the victim' if the victim is 'under 18 years of age,' 18 U.S.C. § 2259(c)(4)." ECF No. 67 at 8. The Court is not persuaded by this reading of the statute in its current form.

At one time, Section 2259 could be read to provide some support for the Government's position. The prior version of that statute defined victim to be "the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court . . . ." 18 U.S.C. § 2259 (1996 version). In *United States v. Tsosie*, 639 F.3d 1213 (2011), the Ninth Circuit considered identical language contained in 18 U.S.C. § 2248(c). It held that the statute was not clear: under a narrow reading, it would cover only "those costs incurred by a legal guardian acting in her capacity as legal guardian—in other words, costs she incurred *on behalf of the minor*." *Id.* at 1220 (emphasis added). On a more generous reading, it would also include "any loss incurred by the legal guardian of a minor *as a result of an offense*," even if the expense was not incurred on the minor's behalf. *Id.* (emphasis added). In dictum, the

4

1   court stated that "common sense" favored the narrower reading, but did not decide the question

2   since the travel expenses at issue in that case were subject to restitution either way.  *Id.*

3         Congress subsequently amended Section 2259, however, to change the definition of

4   victim.  *See* Pub. L. 115-299, §§ 3(a), (b), 4, Dec. 7, 2018, 132 Stat. 4384, 4385).  The statute now

5   reads as follows:

> Victim.—For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the crime victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

11  18 U.S.C. § 2259(c)(4).  Thus, whereas "victim" used to be defined to include "the legal guardian

12  of the victim," the amended statute now defines "victim" to include only "the individual harmed as

13  a result of a commission of a crime."  *Id*.  Legal guardians are no longer included in the definition

14  of "victims"; their role is to "assume the crime victim's rights under this section."

15        This amendment favors Ramirez's position.  The narrow reading of parents' restitution

16  rights that "common sense favor[ed]" in *Tsosie* is an even better fit with the amended statutory

17  language.  Congress's elimination of legal guardians from the definition of victim, combined with

18  its determination that legal guardians "may assume the crime victim's rights under this section"

19  suggests that parents can act in court only to recover those amounts that their children would be

20  eligible to recover on their own behalf.

21        Applying the narrower definition to the amended language also comports with a

22  fundamental canon of statutory construction—that "[w]hen Congress acts to amend a statute, we

23  presume it intends its amendment to have real and substantial effect."  *Stone v. I.N.S.*, 514 U.S.

24  386, 397 (1995).  "'[A] significant change in language is presumed to entail a change in meaning"

25  even when legislative history is silent as to Congress's intent."  *In re Saldana*, 122 F.4th 333, 341

26  (9th Cir. 2024) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of*

27  *Legal Texts* 256–60 (2012)).  In this case, the most reasonable change in meaning is that Congress

28  intended to remove the suggestion that parents and legal guardians have an equivalent right to

recover restitution as minor victims have. Accordingly, the Court will deny the request for restitution related to the parents' psychological and psychiatric treatment.

With regard to Minor Victim One's drug treatment, Ramirez argues that "the Victim and Witness Protection Act of 1982 . . . has been interpreted as limiting restitution to 'loss caused by the specific conduct that is the basis for the offense of the conviction.'" ECF No. 66 at 5 (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990). In this case, he argues, "the offense of conviction was coercion and enticement of a minor. Distributing drugs to the victim was neither the 'specific conduct that is the basis for the offense of the conviction' or 'an element of the offense of the conviction.'" *Id.*

Defendant's position reads the law too narrowly. Contrary to Defendant's suggestion, the Ninth Circuit does not limit restitution to losses caused by the specific offense conduct, but "ha[s] approved restitution awards that included losses at least one step removed from the offense conduct itself." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir. 2001). While the caselaw requires that the loss have "directly resulted" from the offense of conviction, that means only that "the loss cannot be too far removed from that conduct." *Id.* Also, "[d]efendant's conduct need not be the sole cause of the loss." *Id.* Thus, in *United States v. Hackett,* the Ninth Circuit held that a defendant who pled guilty to aiding and abetting methamphetamine manufacture could be ordered to pay restitution to an insurance company for property damage caused when a co-defendant started a fire by placing a jar of chemicals used to manufacture methamphetamine on a hot plate. 311 F.3d 989, 992–93 (9th Cir. 2002). In *United States v. Sanga*, where the crime was conspiracy to smuggle an alien, the Ninth Circuit upheld an order requiring the defendant to compensate the victim for her lost wages. *United States v. Sanga,* 967 F.2d 1332, 1333–34 (9th Cir. 1992). And where the crime was the sending of a threat to injure through the mail, the Ninth Circuit upheld restitution for lost work hours and cleanup costs at the United States Postal Service, the costs of the Los Angeles HazMat response, and the cost of testing the powder contained in the defendant's letters. *United States v. De La Fuente,* 353 F.3d 766, 768, 773 (9th Cir. 2003).

Similarly here, Minor Victim One's need for substance abuse treatment was a direct and

6

proximate result of Ramirez's criminal course of conduct and his efforts to coerce Minor Victim One into performing sexual acts. He provided drugs to her as part of his coercive sexual relationship with her. He introduced her to fentanyl, which was the direct cause of her non-fatal overdoses in September 2022 and January 2023, and regularly drove her from Contra Costa County to San Francisco to procure fentanyl. ECF No. 51 (Presentence Report) ¶¶ 14, 16-17. Their sexual activity most often occurred after Ramirez provided her with fentanyl. *Id.* ¶ 16. In her victim impact statement, Minor Victim One reported, "One thing was constant our drug use together." *Id.* ¶ 40. In his plea agreement, Ramirez admitted ingratiating himself with his minor victims "by offering them narcotics." ECF No. 51 ¶ 35. He "provided narcotics, including cocaine and fentanyl, to these girls and provided narcotics for free in exchange for sexual acts or sexual contact." *Id.*

It is clear from the record that Ramirez's conduct in providing hard drugs to Minor Victim One was part and parcel of his relationship of control. The Court therefore has no difficulty concluding that Minor Victim One's need for substance abuse treatment was "directly related to the defendant's conduct" and not "too far removed" from "the conduct underlying the offense." *Gamma Tech*, 265 F.3d at 928. The Court therefore grants Minor Victim One's request for restitution of $4,460 for medical expenses she incurred when she overdosed on drugs provided to her by Ramirez and $96,400 for the cost of a drug rehabilitation treatment center. In total, the Court grants Minor Victim One's restitution request in part in the amount of $217,532.37.

### B. Minor Victim Two

Minor Victim Two requests a restitution award in the total amount of $175,777.00, comprised of $60,000 for psychological care she has received or will reasonably require in the future, and (2) $115,777 for alternative educational services she received at Fusion Academy, an alternative school she began attending after her interactions with Ramirez.

Ramirez objects to awarding restitution for the cost of Fusion Academy. He argues that the Government "has not established that this loss was incurred as a proximate result of the offense of conviction, as opposed to the victim's use of drugs." ECF No. 66 at 7. The Court rejects this argument for two reasons. First, the reason Minor Victim Two needed to change

schools is that she needed to be in a "lockdown" environment to get away from Ramirez's conduct. *See* ECF No. 68-4 at 2. The unrebutted evidence from Minor Victim Two's parents is that "[her] drug use during the period of [her] academic decline and move to Fusion was directly connected to Ramirez . . . . He was supplying her the drugs and isolating her from her friends. [Her parents] needed to seek alternative school for academic and safety reasons." *Id.* at 3. *United States v. Doe*, 488 F.3d 1154 (9th Cir. 2007), is instructive. In that case, the Ninth Circuit upheld a restitution award to child pornography victims that included tuition for an alternative education program. *Id.* at 1161–62. The court found "that many of Doe's victims stopped attending school altogether after their ordeal and that other victims began cutting classes in significant numbers." *Id.* at 1161. It concluded that it was "perfectly reasonable for the District Court to conclude that the additional strain or trauma stemming from [Doe's] actions was a substantial factor in causing the ultimate loss." *Id.* (citation and quotation omitted) (alteration in original). Accordingly, the Ninth Circuit upheld the award of tuition costs as "appropriate to make these victims whole again." *Id.* at 1162. The same is true in this case.

Second, even if moving to a private school was necessary because of "the victim's use of drugs," Ramirez supplied those drugs to her as part of his efforts to coerce her into sexual activity. "Ramirez . . . provided her fentanyl when she was having a bad day." ECF No. 51 ¶ 2. "[T]here were times that they used fentanyl together and then had sexual intercourse." *Id.* As set forth above, Ramirez admitted "provid[ing] narcotics, including cocaine and fentanyl, to [Minor Victim Two] and provid[ing] narcotics for free in exchange for sexual acts or sexual contact." *Id.* ¶ 35. Thus, for the same reasons Minor Victim One is entitled to restitution for medical expenses and drug rehabilitation treatment resulting from Ramirez's giving her drugs, so is Minor Victim Two entitled to reimbursement for the cost of private school. Her request for restitution in the amount of $175,777.00 is granted in full.

### C.     Minor Victim Three

The government requests the Court order restitution for Minor Victim Three in the amount of $10,000, but identifies no expense borne by Minor Victim Three that would support such an award. ECF No. 67 at 13. Instead, "the government asserts that the Court should award Minor

8

1    Victim 3 $10,000 in restitution given the reasonable certainty that her past and anticipated future

2    medical and psychological care will far exceed that amount, as inferred by the amounts detailed by

3    Minor Victim 1 and Minor Victim 2." *Id.* The defense objects to this request because "the victim

4    has not provided any information regarding what losses, if any, were incurred." ECF No. 66 at 7.

5          The Court will deny the Government's restitution request. The Court is required "to

6    estimate, *based upon facts in the record*, the amount of victim's loss with some reasonable

7    certainty." *Doe*, 488 F.3d at 1160 (emphasis added). The Government is required to prove by a

8    preponderance of the evidence both (1) that the defendant's offenses proximately caused the losses

9    incurred by the victim, and (2) the restitution amount. *United States v. Caro*, No. 22-CR-00455-

10   JST-1, 2024 WL 4778048, at *2 (N.D. Cal. Nov. 13, 2024) (emphasis added) (citations omitted).[2]

11   Because there are no "facts in the record" regarding the restitution amount, the Court is unable to

12   issue a restitution order regarding Minor Victim Three.[3]

13         **D.**      **AprilBlonde and Vicky**

14         The Government requests an award of $5,000 to "AprilBlonde" and $10,000 to "Vicky,"[4]

15   two of the victims of Ramirez's receipt of child pornography. Defendant objects to restitution of

16   any more than $4,000 for either victim, noting that he possessed only five video files with images

17   of AprilBlonde and one video file with images of Vicky.

18         Because child pornography images are commonly viewed by more than one person, it falls

19   to the district court to "apportion liability among the defendants to reflect the level of contribution

20   to the victim's loss . . . of each defendant." *Paroline*, 572 U.S. at 459. This requires the Court to

21   consider a variety of factors, using a framework suggested by the Supreme Court:

22            [D]istrict courts might, as a starting point, determine the amount of
23             the victim's losses caused by the continuing traffic in the victim's

---

[2] *United States v. Venning*, No. 19-CR-152-BLG-DLC, 2022 WL 2156176, at *10–11 (D. Mont. June 15, 2022), cited by the Government, does not hold otherwise.
[3] The Court reaches this result reluctantly. Minor Victim Three testified at Ramirez's sentencing hearing that she entered drug rehabilitation as a result of her victimization by Ramirez. *See* R.T. March 29, 2024 10:21-25 ("I had to waste three months of my life in a rehab. And once I came back from rehab and I told him that I -- like I can't be doing what we do anymore, and then takes me right to San Francisco the next -- like when I get out."). Although the Court sympathizes with Minor Victim Three, however, it still has no way to issue a restitution order without speculating.
[4] As is common in child pornography cases, the victims are identified by pseudonyms.

>images . . . , then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 460. As noted above, the victim's total aggregate recovery is also relevant to determining a fair restitution award. 18 U.S.C. § 2259(b)(2)(C).

Here, the Government has not provided information regarding most of the relevant categories. In particular, there is no information regarding the number of past criminal defendants found to have contributed to the victim's losses, the victim's total aggregate recovery, or any other information that would allow the Court to apportion those losses. "The problem created by the scenario in *Paroline* was how to define the outer limits of one defendant's liability when a multitude of independent forces and other persons also contribute to a victim's present and future harm." *United States v. Flucas*, No. 2:17-cv-00209-KJM, 2019 WL 6250710, at *3 (E.D. Cal. Nov. 22, 2019). The rule in *Paroline* "was crafted to strike a delicate balance between recognizing the real harms of victims of internet distribution of child pornography and at the same time respecting the constitutional limits associated with a fair application of notions of proximate causation." *Id.*

Because the Government has failed to provide the Court with the information necessary to strike that balance, the Court awards each of AprilBlonde and Vicky $4,000, the amount to which the Defendant does not object.

**CONCLUSION**

For the reasons set forth above, the Government's request for restitution is granted in part and denied in part. The Defendant is ordered to pay restitution to Minor Victim One in the amount of $217,532.37; to Minor Victim Two in the amount of $175,777.00; to AprilBlonde in

/ / /

10

the amount of $4,000; and to Vicky in the amount of $4,000.  The request for an award of restitution to Minor Victim Three is denied.

**IT IS SO ORDERED.**

Dated:  March 27, 2025



JON S. TIGAR
United States District Judge